May it please the Court, I'm Daniel Kaplan and I'm here for the appellant Norman Nelson. I'd like to reserve three minutes of my time for rebuttal. Your Honor, the Court should not affirm the convictions in Mr. Nelson's case unless it can find on this record that the evidence was sufficient to enable a reasonable jury to find him guilty beyond a reasonable doubt. Well, Darlene Beeland's been thrown under the bus, so you don't have to worry about her. That was obviously a very crucially sounding factual allegation which the government to its credit has withdrawn. And if you look at the remaining factual support for the convictions in the record, you'll find that there was not enough for a reasonable juror or a reasonable jury to find beyond a reasonable doubt that my client actually stabbed the alleged victim, Mr. Lewis. Well, leaving aside the 12 unreasonable people who went there, I mean, here's kind of what it comes down to. Who stabbed you? Norman. Norman who? Nelson. Do you know Norman Nelson? Yeah. Okay, so we have that testimony. Then, you know, jump ahead, a lot of drinking, a lot of chaos going on, that sort of thing. And then he comes back again, and that's not objected to. Then he says, well, you know, where was Norman? He was in the kitchen. I don't know. Well, you don't know. Do you know Norman? How do you know he stabbed you? Well, everybody was saying that, and I know it was him, though. So he says that. Then, of course, there's some more drinking testimony, and things are in chaos, and people are a little confused over the cooking and other things. And then you get to the end, and he talks about Norman again. So the question I have is there's a lot of evidence that you could use to impeach that testimony or to say, well, it's shaky testimony. But all that testimony came in unobjected to, wasn't kicked out for hearsay or other reasons. So why couldn't the jury listen to that, listen to the other stuff, and say, well, We've got about three or four times here where Norman is kind of fingered. Well, because, Your Honor, it has to be considered reasonably in context. If you're walking down the sidewalk to a very important engagement, like saving somebody on the next block from falling off of a fire escape, and somebody stops you and says, you better not go across the street because there's somebody with a gun around the corner, and they say that very definitively. And you ask them, how do you know that? And they say, well, I had a vision that showed me that, or a talking frog told me that. Well, in context, you don't reasonably ascribe that the confidence you would, as a juror, ascribe factual determinations beyond a reasonable doubt. We don't have, like, Norman is not around the corner on a fire escape. Norman is in the kitchen, and Norman's outside. He knows Norman. People tell him it was Norman. The hearsay evidence is problematic, it seems, because it wasn't objected to. So it comes in just as that's what happened. You're referring to hearsay in terms of people told me that, that's how I knew? Yeah. Okay. Well, I mean, I think that's not the best evidence, okay? Okay. I'm with you on that. And normally you might have had the counsel say, well, you know, he can't testify. You know, we ought to strike that. The jury shouldn't be listening to that kind of evidence. But they did. Well, Your Honor, I'm talking about what those things say about the context of the individual statements like Norman Nilsen stabbed me or I remember him stabbing me. Right. The context shows that he didn't remember anything after he sat down on the couch because he was too drunk to cut me. He said the next thing I remember is being outside and people said I was cut. So the jury knows that he doesn't actually remember being stabbed by Norman Nilsen. The jury then finds out that even though he said I was stabbed by Norman, I know he stabbed me. The reason he thinks he knows that or says he knows that is other people said you got cut and he, for whatever reason, thinks only Norman would do that. So, in other words, there are those individual statements and perhaps there would have been evidentiary objections, and I grant you that I'm not raising that as hearsay. No, I am. I'm saying that a reasonable jury couldn't treat individual statements out of context like I know he stabbed me or I remember him stabbing me as a suitable basis for finding him guilty beyond a reasonable doubt, given the clear context where he's explaining I really don't remember what happened, I really don't remember him stabbing me, but I did reach that conclusion because people said something to me and I made an assumption, which he never explains. He kind of ties it all up, and I don't know what to make of this. He says on 131, it's not clear in your mind what happened that day, and then he says, well, I remember him stabbing me, yeah, but I was drunk and I remember here and there. So it's sort of like yes, but. Well, Your Honor, again, that's one of those statements taken out of context, which when you look at it that way, seems to support it. But he says on page 49, after I sat down on the couch, line 15, okay, then what happened? I was drunk. I don't remember from there on. I was blinking out. Well, this is like a no-body murder case in kind of a weird way because you've got Nelson having a knife in the kitchen, right? Nelson and Lewis were alone outside. Lewis was stabbed outside. It was some kind of a struggle. And then Nelson fled. Nelson was angry. He gave a false name to the police. So is that enough, setting aside the question of what the victim could or could not have known? Well, you started with Nelson has a knife. That was the part that was retracted by the government. She's the only one that says he has a knife. Well, there was some testimony that I saw a big dude and a skinny dude and a fist and a rock or something like that. Albert Secretaro said that he didn't say, I remember seeing the skinny dude, the heavy set dude hitting the skinny dude. He said, I don't remember. And then the prosecutor said, well, do you remember what you testified to before? Because there was a trial that hung. The jury hung and they had a retrial. He said, well, I think I said something about I saw a shadow, and in the shadow there was a heavy set dude throwing a stick or a rock at a skinny dude. And there's some gestures which you can't tell on the record what they were. There are several reasons why the context takes away any ability of that testimony also to support a beyond reasonable doubt finding. First of all, he didn't say he remembered that in the trial that resulted in conviction. He said, I think I testified to that before. And on that trial, he said, I really don't remember what happened. Secondly, he said it might have been a dream. Thirdly, he said he was incredibly drunk and he passed out two hours later. Fourthly, if that's a word, he said that it was something, it was just a shadow. He really thought it was just a shadow. And something about a stick or a rock, and at one point I think he did say this skinny dude is Carlos. But when he said I saw the heavy set dude throw a stick or a rock, he never identified the heavy set dude as Norman Nilsen. The record indicates that at some point Nilsen stood up and allowed the jury to see what he looked like, but he never identified Norman Nilsen as the heavy set shadow that he saw. It could have been another heavy set person who made that shadow or a person whose shadow looked heavy set for whatever reason under the circumstances. Mr. Secattaro literally didn't know if it was day or night. He was asked whether it was day or night. He didn't know, although apparently it was lighting conditions that were suitable to create a shadow. So that's really the gist of the sufficiency argument. You know, given the context, given the complete testimony, the jury didn't have enough to really reach a finding beyond a reasonable doubt to support that, and a reasonable jury couldn't have done that to that standard of proof. I'm going to turn to the second argument, unless the Court has further questions about that, about the hearsay. Given how shaky the evidence was, and don't take my word for it, the first jury hung, had several questions. The second jury also had some questions, one of which was the same. They both wanted to know was the defendant right or left-handed. Apparently they had some doubts about whether Norman Nelson was actually the person who stabbed the victim. They were doing CSI in the jury room. And they didn't find guilt on the second count in the second trial, and they deliberated for a substantial period of time in what was essentially a pretty simple case. So this really was a closed case, and in a closed case, it's a statement like a police officer who sits on the stand and says, the victim said Norman Nelson stabbed me close to the time when he allegedly was stabbed, is certainly the type of thing that could tip the balance in the jury's mind and lead to conviction. And so if that was error for that to come in, that certainly would be prejudicial error, and we believe it was error. That was objected to very clearly both times in both trials. The first time it came in, the government called it medical for medical treatment. How do you get around Owens? Well, Your Honor, we get around Owens essentially because when Congress enacted Section 801D1C, and it was objected to by the Senate the first time the Federal rules were enacted, and then it was slipped in a little bit later, Congress made it very clear that 801D1C was meant to allow out-of-court statements to come in when they are made in constitutionally regulated situations. That's not what Owens held. Owens allowed both. The unconstitutionally regulated and the constitutionally regulated situation to go into evidence. It allowed both. Well, I disagree with that in part because it is true that initially the agent said to Mr. Foster in the hospital, do you know who stabbed you? And Foster said, yes, it was Owens. And that came in. And that came in. Then right after that he showed him the photo spread. My point about that is I believe that's still within a constitutionally regulated situation in the sense that the agent, the agent who asked the question, knowing he's sitting there with his photo spread ready to show it to this person, would be careful under those circumstances not to be unduly suggestive in a way that would violate the constitutional framework for identification. And there's some reason for confidence in it. It's a good argument, but I'm not sure it's not foreclosed by Owens. Well, Your Honor. What you're saying is Owens is wrong. No. Obviously the on-bank court would have to examine that if that were going to be the argument. I am saying that Owens should be limited somewhat in the sense that it shouldn't be applied to a situation, to any kind of accusation, even when it's not made in the context of a constitutionally regulated photo spread line up or even show up. You're saying it's sort of a combination in Owens because you had the two things happening in proximity? Exactly. Inextricably intertwined. Magic words that we use. That's essentially the argument, Your Honor. There's one more thing I want to say about Owens, and then I'm going to reserve my time if I may, which is that the legislative history and some of this Court's case law have pointed out that 801D1C, the heartland of an 801D1C situation, is where a witness gets up at trial, and perhaps because of fear of the defendant, perhaps because of progressive memory loss, like in the Owens case, can't remember, can't verify the identification that he or she made before. And in those situations, 801D1C is meant to deal with those situations. The Owens case falls into that heartland because Foster, because of his injuries, had progressive memory loss and couldn't remember as much on a trial as he could when he spoke to the agent. This case doesn't come anywhere near that heartland. This witness was just as able, in fact, more able to talk about the truth when he was at trial because he wasn't incredibly drunk at trial than he was when he made the statement. And he really is the reverse of the heartland of the Owens, of the 801D1C purpose for allowing an out-of-court status. You can reserve the remainder portion of your time. May I please record on behalf of the United States in this matter. I'll begin by noting that there is no doubt that there is ample impeachment evidence in this case that the witness's memories may not have been as accurate as one would wish. But the evidence in this case is such that the jury reasonably could have found exactly what they found. May I ask one question that's troubling me? Sure. We know that the government has to prove every element beyond a reasonable doubt. Is there evidence sufficient to infer that Nelson knowingly stabbed Lewis, the intent element? Where do I find that in the record? That would be an inference that the jurors could draw from the circumstances of the case. He has two stab wounds in the chest and one in the neck. This is hardly an accidental stabbing. And that really was not the argument that was made below to the jurors about whether Mr. Nelson intended to stab. The main question was who was the stabber. Now, was there any question raised about whether Lewis, whether Nelson was acting in self-defense? Was that a defense raised in a trial? They did raise that at trial, Your Honor. But Carlos testified that he didn't act in any threatening manner toward Mr. Nelson. And Mr. Nelson didn't present any evidence that Carlos did act in any threatening manner. But, Liz, go ahead. Go ahead. Was there, given the confusion that come from the kitchen to the outside and it's very unclear what happened, if you don't have any evidence as to how it happened, is it equally likely that it was sort of just a brawl that kind of went awry? I mean, why wouldn't he be able to get those kind of stab wounds in a sort of a roll-around kind of brawl? You have the testimony of Al Sacatero. Because it was discussed, I brought the pensioner with me to the podium. And it exceeds the record 1 of 53. And the testimony is who were the people that you saw outside the house? Just Norman and Carlos. Yes. And what did you see? I just seen the shadow about like behind the house. And then he says he was just throwing a rock like this. Maybe he was throwing a rock or maybe he was throwing a fist. That's ER 153. And again, as the government and other ethnologists, these witnesses were all inebriated to a greater or lesser degree. And that is certainly a factor for the jury to take into account on who to believe. But the testimony is there in the record. And the jury is entitled to believe that testimony. So what we have is we have Carlos testified that a defendant stabbed him. And that is at ER 156. He acknowledges that he doesn't remember what happened here and there, but I remember him stabbing me. And that was in the context of talking about Norman. The defendant was alone with Carlos at the time of the stabbing. And as I noted just now, you've got a heavy set dude to a rock or a fist, a skinny dude, which Mr. Secretary identified as Carlos. The girls from Durham called the police to say that the defendant had stabbed Carlos. And then the defendant fled and was able to be captured for two days. When you put all of that together, even considering how inebriated the witnesses were, a jury reasonably could determine that Norman Yeltsin intentionally or knowingly stabbed Carlos. If there aren't any questions on that, I'll move on to the EMTs. Because Trott is correct that Owens controls this case. And the point I would like to make about Owens is although Defense Counsel tries to make Owens, he looks at Owens in the light that the statement about who assaulted you and the subsequent identification procedure were all one and the same. The court in this court in Owens took those as separate questions. Was the statement of identification admissible, yes or no? And then they also went on to look at the identification procedure. This is, in that way, this is no different than the Owens case. And if there are no further questions on that issue or any other issue, I will sit down. Thank you. Thank you, Your Honor. I think you're going to have about three minutes or so that you save for rebuttal. Your Honors, I want to just pick up on a couple of the points that have been made, which is the scenario of this may have been in self-defense. There was a self-defense instruction given at the Defense Counsel's request. Or a brawl that went awry could have been the explanation for what happened. The evidence that was before the jury was perfectly consistent with that being what happened. This Court, in the case called Vasquez-Chan, which is 978 F. 2nd 546, has made the point that when the evidence is equally supportive of two different factual inferences, one of which supports guilt and one of which would support innocence, and there's no basis for a jury to choose version A over version B beyond a reasonable doubt, the evidence is not sufficient to support the conviction. And to the extent the Court looks at the evidence and thinks that maybe there's a basis for drawing the inference that Norman Nilsen actually stabbed Mr. Lewis with the intent to cause the harm, yes. How does that square with the proposition that we're to regard the evidence in the light most favorable to the verdict? It doesn't conflict with that principle, Your Honor, simply because even in the light most favorable to the verdict, the jury has to reasonably have a basis for choosing an interpretation of the evidence beyond a reasonable doubt that results in that guilty verdict. So even looking at it in that perspective, the Court has to find the jury has something on which to choose version A over version B. And this is not a situation where the evidence would provide that basis, providing you even get that far to say that version B, the guilt version, could be supported by a reasonable set of inferences from the evidence, and I don't believe you could. But your client's behavior after the fact suggests guilt. Is that right? No. Well, let me, I think the same point pertains to that. There was some evidence he gave a false name to a tribal police officer who found him walking along the road. And he fled the scene. Well, okay, fled the scene, he left the scene, and he wasn't found for a while afterwards. The question is, can a reasonable jury say that shows consciousness of guilt or can a reasonable jury say that that shows consciousness of the fact that they told the police that he stabbed Mr. Lewis? The evidence was that when he came back to the house, he said, who called the police and Al Secattaro says I told them to get out of there. It was clear to Mr. Nelson at that point that they had accused him of stabbing Carlos Lewis. If I were Mr. Nelson's shoes, I might have fled the police too and given a false name. But the question is, could the jury reasonably find that rather than accepting that reasonable interpretation of the facts, they must accept the interpretation that he actually did stab Carlos Lewis and he was fleeing because of his guilt? Thank you. Thank you. I want to thank both counsel particularly for being so familiar with the record. It's very helpful to us. The case just argued of United States v. Nelson is submitted and we're adjourned for this morning. We have, I know, a delegation from Thailand, so we will be back shortly to talk with you. Thank you.
judges: Trott, McKeown, Ikuta